Glenn A. Opell, Esq.
Opell Law P.C.
11 Park Place, Suite 1008, New York, NY 10007
Tel: (212) 896-3310
Fax: (212) 896-3316
gopell@opelllaw.com

*Attorneys for Creditor Public Administrator of New York County as
  Temporary Administrator of the Estate of Simone Ender*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re:                                                :        Chapter 13
                                                      :
    MONIQUE ENDER-SILBERMAN,            :        Case No. 25-11601 (PB)
                                                      :
                  Debtor.     :
                                                      :
---------------------------------------------------------------x

DECLARATION ON BEHALF OF CREDITOR PUBLIC ADMINISTRATOR OF
NEW YORK COUNTY AS TEMPORARY ADMINISTRATOR OF THE
ESTATE OF SIMONE ENDER

    I, **GLENN A. OPELL**, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct to the best of my knowledge:

    1.    I am a principal of Opell Law P.C., attorneys for the Public Administrator of New York County (the "Public Administrator") as Temporary Administrator of the Estate of Simone Ender (the "Estate"). Simone Ender ("Simone") died on March 7, 2022. Letters of temporary administration issued to the Public Administrator by order of the Surrogate's Court of the State of New York, County of New York (the "Surrogate's Court"), dated January 26, 2024 (the "Order of Appointment") and remain in full force and effect. A copy of the Order of Appointment is attached hereto as **Exhibit A**.

    2.    I respectfully submit this Declaration in response to the application by Debtor Monique Ender-Silberman ("Silberman") seeking to impose an automatic stay pursuant to 11

1

U.S.C. §362(c)(4) as it relates to the disposal of Silberman's belongings that were located within premises located at 710 Park Avenue, New York, New York (the "<u>Building</u>").

3. The Estate is the successor in interest of all of Simone's interest in the 1080 shares of stock (the "<u>Shares</u>") and proprietary lease (the "<u>Lease</u>") appurtenant to apartment 4A (the "<u>Unit</u>") issued by Creditor 710 Park Avenue Corp. (the "<u>Corporation</u>") to Paul A. Ender ("<u>Paul</u>") and Simone as joint tenants with rights of survivorship on October 29, 1979. The Corporation is a residential cooperative which owns the Building. Paul predeceased Simone and his interest in the Shares and Lease passed to Simone by operation of law. A copy of the certificate evidencing ownership of the Shares and the cover page of the Lease are annexed hereto as **Exhibit B**.

4. Silberman has no ownership interest or tenancy rights to the Unit. She is the daughter of Simone but, contrary to her statement in ¶4 of her affirmation in support of a stay, Silberman is not her mother's sole distributee. Silberman has a sister, Bridgitte Laing, who is also a distributee of Simone. Furthermore, although Silberman was nominated as the executor under a purported last will and testament of Simone that is on file with the Surrogate's Court, Silberman has failed to prosecute the probate proceeding and, after a seven plus hour hearing on Silberman's eligibility to serve as preliminary executor, the Surrogate issued a decision and order, dated April 22, 2024, finding that Silberman demonstrated "a want of understanding…to protect and manage estate assets" and "a pattern of delayed action in response to court directives in these proceedings that shows a disregard for the mandates of the court and raises serious questions about her fitness to serve as fiduciary." The Surrogate concluded that Silberman is ineligible to serve as fiduciary pursuant to New York Surrogate's Court Procedure Act 707 and reaffirmed the Public Administrator's appointment as temporary administrator. A copy of said decision and order is annexed hereto as **Exhibit C**.

5. As the Corporation notes in its Declaration, Silberman previously occupied the Unit with Simone and, after nearly six years of litigation, she was finally evicted on February 26, 2025. The Estate owes the Corporation over $500,000 in unpaid maintenance, legal fees, and late fees that accrued as a result of the litigation and actions and inactions of Silberman. The only way for the Estate to pay those charges is to sell the Unit. In order to sell the Unit, it needs to be cleared of its contents.

6. This third bankruptcy petition was filed on the heels of (and likely as a direct result of) communications by affiant to Silberman's attorney to remove her possessions from the Unit and the Building. The Unit was the primary residence of Simone and the contents largely belong to the Estate. Nevertheless, the Public Administrator went above and beyond all that can be expected to give Silberman an opportunity to identify and retrieve her personal belongings that were in the Unit. A summary of those efforts is as follows:

   a. Affiant informed Silberman on April 1, 2025 that the Public Administrator would give her one full day to remove her personal property from the Unit and asked her to provide a date she is available to identify her items.

   b. It then took Silberman 6 weeks to provide a date. On the date she provided, May 16, 2025, Affiant received an email at 7:14 am from Lawrence Chaifetz, Esq. ("Chaifetz"), an attorney who was representing her, advising that Silberman is sick and cannot attend the viewing. Chaifetz proposed rescheduling for the following week.

   c. Silberman and Chaifetz failed to provide a date for the following week, and it was ultimately rescheduled for May 28th.

   d. Affiant and the Public Administrator's investigators were at the Unit on May 28, 2025, with Silberman participating through videochat, wherein, over the course of 3

hours, Silberman identified the items in the Premises belonging to her and Affiant and the investigators set those items aside for her.

  e. Before the May 28, 2025 meeting, Silberman signed a document entitled Receipt, Release, Refunding and Indemnification Agreement, wherein she (i) agreed to follow all the rules imposed by the Corporation in connection with accessing the Unit, (ii) agreed to receive only her personal property, which was to be moved by her, at her sole cost and expense, (iii) consented to the Public Administrator selling all other personal property in the Unit and (iv) released and indemnified the Public Administrator with respect to the administration of the personal property in the Unit. A copy of the Agreement is annexed as **Exhibit D**.

  f. Despite repeated inquiries by Affiant, it took Silberman until June 17, 2025 to procure a mover to move her items from the Unit. On that day, the movers declined to proceed because of rodent droppings in the Unit.

  g. On June 26, 2025, Chaifetz wrote to Affiant, "My client has advised me that she has secured a new mover for Monday and will provide [a certificate of insurance] today." No certificate of insurance was provided and the move did not occur.

  h. On July 2, 2025, Affiant wrote the following to Chaifetz: "The Public Administrator will be retaining a mover to pack the items that Monique Silberman is claiming in 710 Park Avenue. Monique can participate in the packing via video chat. The cost of the move will be charged to Monique. I need to know the address of the apartment or storage facility Monique wants the items delivered to. I will let you know when the date for the move has been scheduled." The attorney wrote back "I will let you know."

  i. On July 10, 2025, Affiant wrote the following to Chaifetz: "The packing and moving of Ms. Silberman's items from 710 Park will be on 7/23. Please tell Ms. Silberman

to be available for a video call with the Public Administrator's investigator, Anthony Bedford, on that date. I need from you no later than the end of the day 7/15 the address of the storage facility where the items will be delivered to." The attorney wrote back "Noted."

j. That same day, Silberman filed in the Housing Part of the Civil Court of the City of New York ("Housing Court") her third order to show cause to be restored to the Unit (the "OTSC"). As permitted under the OTSC, she was granted access to the Unit on July 11, 2025 for two hours and retrieved various personal effects, including a laptop computer, medicine and papers.

k. The OTSC was heard on July 14, 2025. The Housing Court judge denied Silberman's request to be restored, citing the arrears owed by the Estate in excess of $539,521, but granted Silberman access to the Unit on July 23, 2025 from 10 am to 1 pm for the purpose of removing her belongings. The order specifically stated "After July 23, 2025, all stays vacated and Ms. Silberman's belongings can be disposed of as permitted by law." A copy of the order is annexed hereto as **Exhibit E**.

l. The Public Administrator's investigators arrived at the Unit on July 23, 2025 with movers, but Silberman did not appear. Rather than take responsibility for the removal of her possessions, the day prior she filed her third Chapter 13 bankruptcy petition in the past twelve months, in the hopes that it would stay the removal of her belongings from the Unit. The investigators called Silberman but she did not pick up and they were not able to leave a voicemail. They texted her and she informed them that her items could not be touched because of the bankruptcy petition.

m. The movers packed all the items Silberman identified to affiant and the Public Administrator's investigators during the May 28, 2025 videochat (see ¶6[d] *supra*), as well

5

as all items that were in a basement storage unit at the Building which Silberman claimed belonged to her, and moved them to the moving company's storage facility, where they are currently being held.

7. As noted *supra*, this is the third bankruptcy filing made by Silberman in the past twelve months and it was filed on July 22, 2025, the day before she was to remove her belongings from the Unit. The petition was filed in bad faith under the mistaken belief it would stay her responsibility to remove her belongings from the Unit.

8. Pursuant to 11 U.S.C. 362(c)(4)(A)(i), if a debtor files two (2) or more bankruptcy cases within 12 months that were dismissed, the stay does not go into effect.

9. Pursuant to 11 U.S.C. 362(c)(4)(B), a stay may be granted only if a party in interest demonstrates that the filing of the later bankruptcy case was made in good faith as to the creditors to be stayed.

10. Pursuant to 11 U.S.C. 362(c)(4)(D), a case is presumptively not filed in good faith if (i) two (2) or more cases under this title were pending within the (one) 1 year period; or (ii) a previous case was dismissed after the debtor failed to file or amend the petition or other documents required by this title.

11. In regard to Silberman, her prior petition, under Case No. 24-11973, was dismissed on February 7, 2025, for failing to file bankruptcy schedules as required by 11 U.S.C. 521(a)(1). A copy of that dismissal order is attached as **Exhibit F.** As a result, this case is presumptively not filed in good faith.

12. Silberman's behavior in filing this petition is consistent with the "pattern of delayed action in response to court directives" and "disregard for the mandates of the court" that Surrogate Mella found when she disqualified Silberman from serving as fiduciary of the

Estate (see Exhibit C).

13. Silberman has already denuded the Estate of over half a million dollars because of her delay tactics and evasions in the Housing Court and Surrogate's Court proceedings. She has caused further cost and expense to the Estate in not removing her items from the Unit and Building, despite being given ample opportunity to do so. Because of this third bankruptcy petition and request for a stay, the Public Administrator was forced to use Estate funds to pack, move and store Silberman's belongings from the Unit and Building. The Public Administrator did this because the Unit needs to be sold to pay creditors of the Estate and the contents need to be emptied prior to listing it for sale. If Silberman wishes to take possession of her belongings from storage, she can do so at any time. The Estate cannot continue to bear the cost of storage.

14. Given that Silberman has not filed this latest bankruptcy case in good faith, there should be no stay on the disposition of her belongings by the Public Administrator.

15. Additionally, there should be no stay or relief granted against the Corporation. Silberman is not an owner or a permitted occupant and, to the extent she did have any occupancy rights, she has not properly completed the certification on Official Form 101A and has not deposited any rent with this court.

16. In light of the above, any relief requested by the Debtor pursuant to 11 U.S.C. § 362(c)(4) should be denied in its entirety, and the Public Administrator and the Corporation should not be subject to any stay or injunctive relief.

**WHEREFORE**, the Public Administrator respectfully requests that the Court deny the Debtor's application in full, and grant such other and further relief as the Court deems just and proper.

I affirm this 19th day of August, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

                                                  /s/ Glenn A. Opell
                                                Glenn A. Opell